Bispels *v.* Charles R. Shoemaker, Inc. (Appellant et al.).

Argued September 27, 1938.

Before KELLER, P. J. CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*Herbert G. Marvin,* with him *Ralph N. Kellam,* for appellant.

*Louis Wagner,* with him *T. J. Clary* and *R. A. Smith,* for appellee.

OPINION BY STADTFELD, J., October 28, 1938:

On September 22, 1933 and for some time prior thereto, John C. Bispels was employed as a mechanic by

Charles R. Shoemaker, Inc. On that day, while engaged in cutting a piece of corrugated sheet iron with a hammer and hatchet, claimant was struck in the right eye by a piece of the metal. The eye was punctured. He underwent a course of treatment under the direction of Dr. Maxwell Langdon, defendant employer's physician, and at different intervals was unable to work during his hospitalization. He has, however, been retained in defendant's employ. Upon the referee's disallowance of claimant's petition for compensation, the board remanded the record for further hearing. The referee then found that "as a result of the accident the claimant has suffered a loss in earning power of $5 per week." Accordingly, he entered an award directing payment of compensation on a partial disability basis. The board, increasing the award on the basis of a finding of $7 per week loss of earning power, affirmed the decision of the referee. The court of common pleas entered judgment upon the award as made by the board. This appeal followed.

Appellant contends that there is not sufficient legally competent evidence to sustain the conclusion that claimant suffered a loss of earning power.

The testimony as to claimant's wages discloses that at the time of the accident, and for some time prior thereto, claimant had been receiving a weekly wage of $25; that immediately following the injury, claimant continued to receive his regular weekly wage of $25; that two months after the accident, claimant's wages were raised to $27.50 per week; and that a year later, his wages were again raised, from which time onward he received $30 per week.

The principle is now well established that the amount of wages actually received after an accident is evidence, but not conclusive, in determining the earning power of the employee at such time.[1] It is no less than proper

---

[1] *Cavanaugh v. Luckenbach Steamship Co.,* 125 Pa. Superior

that wages actually received should not be regarded as conclusive evidence of earning power. Such wages may often indicate that the employee is the beneficiary of a mere gratuity, that the character of his work does not truly reflect his earning power, that a general rise in wage scales has taken place for that particular type of work, or, indeed, that it is intended as an inducement to the employee to refrain from pursuing his claim. In the instant case, the claimant testified that on the Saturday afternoon preceding the hearing of Monday, December 23, 1935, the vice-president of defendant company told him he was given a raise in wages so that he would not sue the defendant.

Earning power is to be determined not only by taking into account the actual amount of wages an employee receives following an injury, but also by considering the other elements affecting his earning power.[2] Such elements include (1) the character and extent of his physical injury or disability; (2) his productivity or efficiency in the same employment as compared to what it was immediately prior to the injury; and (3) his ability to earn wages in any kind of employment for which he is fitted.

There is no dispute, in the instant case, as to the fact of claimant's physical injury. Tests of claimant's right eye disclose that it can distinguish only light and darkness. The use of a cataract lens gives the right eye normal vision when used alone, but re-

---

Ct. 275, 189 A. 789; *Plum v. Hotel Washington et al.,* 125 Pa. Superior Ct. 280, 189 A. 792; *Harmon v. Knoll,* 129 Pa. Superior Ct. 390, 195 A. 448; *Conley v. Allegheny County,* 131 Pa. Superior Ct. 236, 200 A. 287; *Henry v. Pittsburgh Rwy. Co.,* 131 Pa. Superior Ct. 252, 200 A. 294; *Reckner v. General Water Co. et al.* 131 Pa. Superior Ct. 538, 200 A. 297.

[2] *Bausch v. Fidler,* 277 Pa. 573, 121 A. 507; *Johnson v. Jeddo Highland Coal Co.,* 99 Pa. Superior Ct. 94; *Bonomo v. State Workmen's Ins. Fund et al.,* 111 Pa. Superior Ct. 402, 170 A. 428.

sults in double vision when used together with the left eye, the two eyes failing to coordinate.

The effect of his physical injury upon claimant's productivity or efficiency in the same general work is disclosed by his own uncontroverted testimony. It appears from the evidence that whereas, before the injury, he skimmed a drum of grease in five minutes, it takes him twice as long since the accident. Formerly, claimant used to fasten the chain of an electric hoist to the drums to lift them out of a hot water tank. But this job he can no longer perform, since it required him to work around the edge of this tank. The eye injury required the exercise of more care in pushing around drums of grease so as to avoid hitting someone or running into various objects in the place of his employment, such as a crane or a tram on wheels. Furthermore, in the course of his employment, claimant comes into contact with steam arising from the hot water, which clouds his glasses and increases the hazard of injury so as to make it impossible for him to perform certain tasks which he performed before the injury.

Moreover, it appears that claimant is handicapped in the performance of the duties of his employment outside the place of his employment. As a salesman on the road every other week, he is required to spend seven days to cover by automobile the same route which, before the accident, had taken him only five days. This limitation he attributed to the fact that he cannot see as well in the dark while driving and, therefore, he cannot begin as early in the morning nor continue as late in the evening. He is also required to exercise more care in walking past the grain pits in the mills he calls upon.

In determining the extent of his impaired earning power, claimant produced Mr. Edward E. Stiles, who for five years, has been supervisor of the Philadelphia office of the Bureau of Rehabilitation, and whose business is to find employment for crippled people. Experi-

enced in obtaining employment for men who have suffered the loss of vision in one eye, Mr. Stiles had, during the course of the year preceding his testimony, handled about thirty cases of men who had lost the use of an eye. Altogether, during his five years of experience, he had handled one hundred cases of men with only one eye. Among these were men who had only a grammar school education and whose occupation was limited to manual or general utility work. From the entire testimony of this witness, it appears as his opinion that claimant, with one eye, would not be able to earn in any employment more than $17 or $18 per week.

After a careful review of all the testimony in the case, we are of the opinion, considering the nature of claimant's disability, his impaired efficiency and his limited command of earnings in other employment together with his explanation of the high wages received after the accident, that there is sufficient legally competent evidence to support the conclusion of the referee and the board that claimant had sustained a real loss of earning power.

The assignments of error are overruled and judgment is affirmed.