## Strickland, Appellant, *v.* Baugh & Sons Company et al.

Argued September 28, 1939.

Before Keller, P. J., Cunning-
ham, Baldrige, Stadtfeld, Parker, Rhodes and Hirt,
JJ.

*Alexander F. Barbieri,* for appellant.

*George H. Detweiler,* with him *Robert A. Detweiler,*
for appellee.

*Charles E. Kenworthey,* for interested party.

Opinion by Rhodes, J., March 2, 1940:

As the result of an accident in the course of his em-
ployment on September 17, 1936, claimant suffered cer-
tain injuries to his left hand, which were described in
a compensation agreement of September 30, 1936, as
"traumatic amputation of left middle finger through
middle of middle phalanx, amputation of ring finger
through middle of middle phalanx." The agreement
called for payment of compensation for fifty weeks at
$13.66 per week, based upon an agreed weekly wage of
$21.01. There is no dispute that under the compensa-
tion agreement claimant was paid the fifty weeks for
the loss of the amputated fingers, under section 306(c)
of the Workmen's Compensation Act of 1915, as
amended April 13, 1927, P. L. 186, §1, and that he signed

a final receipt (approved November 12, 1937), for the period covered by the agreement which expired on September 9, 1937. He returned to work for the same employer about two months after being injured, and was given janitorial duties instead of the heavy laboring work he had done formerly, although he was paid the same wages as before. After working as janitor for five months claimant was returned to his laboring job in a rock shed, but he was unable to perform those duties to the same extent as before being injured, yet he was paid the same amount of money. He could not do shoveling, and worked only intermittently, working several days and resting several days. This was due to the fact that his little finger, index finger and stump of the middle finger, as claimant expressed it, "would irritate if I handled anything, I could mash them that way and get blood out of them," and the tips of them would swell. He continued to work in this manner until May 9, 1938, when he was no longer able to work. On May 26th following, claimant returned to defendant employer and asked for work. He was given a job which involved handling bags of bone black, which, being a hard substance, made the ends of his fingers raw, so that he was unable to continue, and has not worked since.

Dr. Kleinman testified that on June 2, 1938, he found an infection in the little finger of claimant's left hand which was due to an abrasion, and that the abrasion occurred because there was an insufficient palmar pad on the finger to withstand such trauma as claimant encountered in his work. The palmar pad on his left index finger was also deficient although not so much so as the little finger, and there was no actual lesion there. In his opinion claimant was able to do only light work, and the condition of these fingers was due to the previous injury. The doctor explained that claimant had only the index and little fingers to approximate against his thumb, and that this contributed to the breaking

open of those fingers, especially if the work was such as to require the tips of the fingers. He thought that the condition of the little finger would be improved by an operation to remove some bone from the tip in order to allow more fleshy pad, and that the condition of the index finger could not be improved by anything less than a plastic operation.

On September 17, 1936, when the accident occurred, the Employers' Liability Assurance Corporation (appellee herein) was the insurance carrier; on January 1, 1938, the Travelers' Insurance Company assumed the risk.

The referee found that claimant had suffered a recurrence of disability due to the accident of September 17, 1936, and awarded compensation for total disability from May 26, 1938, to October 18, 1938, the date of the hearing, and for fifty per cent partial disability thereafter. Both claimant and defendants appealed to the Workmen's Compensation Board which found as a fact that claimant had been partially disabled to the extent of fifty per cent from the time of the accident on September 17, 1936, to May 26, 1938, at which time disability became total, and so continued until the date of the hearing, when it again became fifty per cent partial disability, and that such partial disability still continued. Accordingly, the board struck out the referee's eleventh and twelfth findings, and substituted its own findings, eleven to fourteen.[1]

---

[1] "11. The claimant as a result of the condition of the tips of his little and index fingers was partially disabled from the date of the accident of September 17, 1936 to May 26, 1938, which partial disability reflected itself in a 50% loss of the claimant's earnings or earning power and on May 26, 1938, the condition of the tips of the little and index fingers became such as to result in the claimant's total disability which total disability continued to October 18, 1938 on which date his disability reduced to a partial disability which reflected itself in a 50% loss of his earnings or earning power which disability continued to the date of

The board was of the opinion that the claimant sustained disability under both section 306(b) and section 306(c) of the Workmen's Compensation Act of 1915, as amended April 13, 1927, P. L. 186, §1, as the result of the accident on September 17, 1936. The compensation agreement made no mention of the injuries to the index and little fingers. The board found that the agreement was executed under mutual mistake of fact, and could be corrected under a petition for review, which it considered appellant's petition to be, filed June 17, 1938; and the final receipt for the compensation paid for fifty weeks ending September 9, 1937, under section 306(c) was accordingly considered out of the case by the board. See *Johnson v. Purnell et al.*, 131 Pa. Superior Ct. 230, 200 A. 151; *Busi v. A. & S. Wilson Co. et al.*, 110 Pa. Superior Ct. 95, 101, 167 A. 655; section 413 of the Workmen's Compensation Act of 1915, as amended by Act of June 26, 1919, P. L. 642, §6.

the hearing and is likely to continue for an indefinite future period of time.

"12. The Board further finds as a fact that about two months after the accident of September 17, 1936, the claimant returned to work for the defendant and received wages equal to those earned prior to the accident until May 9, 1938 when he ceased work. During this time, however, the claimant was given light work and when troubled by the condition of the fourth and index fingers, the defendant placed the claimant at selective work until the fingers healed. During this period of time this frequently occurred.

"13. After a careful consideration of all the testimony, the Board is of the opinion and finds as a fact that the claimant was not accidentally injured on May 26, 1938 by reason of the handling the bags of bone black, but that on that date the partial disability which the claimant had suffered continuously from the date of the accident of September 17, 1936 resolved itself into a total disability and which disability dates back to the original accident of September 17, 1936.

"14. The Board further finds as a fact that the 50 week period during which compensation was paid to the claimant under compensation agreement No. 3,326,462 expired on September 9, 1937."

The board awarded compensation to claimant for fifty per cent partial disability from September 9, 1937, the end of the fifty-week period covered by the agreement, to May 26, 1938; for total disability from May 26, 1938, to October 18, 1938, the date of the hearing, and for fifty per cent partial disability thereafter.

Defendant employer and its insurance carrier, the appellee, appealed to the court below, which did not agree with the board that the agreement was executed under mistake of fact, and which held that there was no evidence to support the conclusion that claimant had suffered a fifty per cent loss of earning power, and further that whatever disability he has is due to a second accident on May 26, 1938, and not to that of September 17, 1936. The court below directed also that the record be remitted to the board for further proceeding not inconsistent with its opinion. Claimant has appealed.

Appellee's counter statement of questions involved submits two propositions, and appellee's argument, in addition thereto, refers to a third. They are substantially as follows:

1. That appellant suffered an accident on May 26, 1938, in the course of his employment, whereby the skin was torn from his index and little fingers, and disability followed; and that there was no evidence of any sort to support the finding of the board that appellant was not accidentally injured on May 26, 1938.

2. That appellant was not entitled to an award of fifty per cent partial disability from September 9, 1937, to May 26, 1938, and from October 18, 1938, until such time as the disability of appellant shall cease or change in extent within the meaning and limitations of the Workmen's Compensation Act of 1915, as amended.

3. That the appeal to this court is interlocutory.

In the briefs submitted considerable argument has been devoted to the question of whether or not appellant had a second accident on May 26, 1938. The evi-

dence would not support a finding that appellant suffered an accident on that date, within the rule laid down by the Supreme Court as to what constitutes an accident in *Adamchick v. Wyoming Valley Collieries Co.*, 332 Pa. 401, 3 A. 2d 377. *Fillman v. Wolfe et al.*, 100 Pa. Superior Ct. 306, and *Benci v. Vesta Coal Co.*, 131 Pa. Superior Ct. 435, 200 A. 308, cited by appellee, are clearly distinguishable, and not applicable, as an examination of these cases will disclose. But the evidence is sufficient to support the finding of the board that there was no accident suffered by appellant on May 26, 1938. As stated by the physician who testified, the accident on September 17, 1936, left the two fingers in such condition that they could not withstand the ordinary trauma involved in the performance of appellant's usual work as a laborer.

There was sufficient evidence to sustain the finding that appellant has suffered a fifty per cent loss of earning power. It establishes that in addition to the injuries for which appellant was compensated under the agreement, he suffered injuries to his index and little fingers which left insufficient palmar pads of tissue over the bones, and this is not seriously disputed. When his period of total disability ceased, at the end of two months, appellant did not return to his laboring job in the rock shed, which was heavy work. He was given light work, consisting of janitorial duties in the washroom. Appellant testified: "They said they would put me in there because it would be a good job for my hands." After five months as janitor, he went back to the rock shed, but the condition of his fingers was such that when there was any heavy work to do, such as shoveling, he was unable to do it, and resumed his duties in the washroom. As appellant said: "They looked out for me." He continued in this manner until May 9, 1938, when he ceased work. On the twenty-sixth of the same month he tried to work again with the result previously related. Appellant was appar-

ently unskilled in any trade, and was obliged to perform hard physical labor for a living.

Appellee stresses that appellant suffered no diminution in wages as long as he was employed, and argues that there is an absence of testimony showing that he did not earn what he was paid. The vitality of the argument which seeks to attach conclusive effect to non-decrease in wages is surprising considering the frequency and force of its rejections.[2]

That appellant was favored by his employer after being injured, and was not earning the wages received was not an abortive inference from the testimony (*Bonomo v. State Workmen's Insurance Fund et al.*, 111 Pa. Superior Ct. 402, 170 A. 428; *Bispels v. Charles R. Shoemaker, Inc., et al.*, 133 Pa. Superior Ct. 117, 2 A. 2d 35; *Marmon v. Union Collieries Co.*, 135 Pa. Superior Ct. 582, 7 A. 2d 156; *Weinstock v. United Cigar Stores Co. et al.*, 137 Pa. Superior Ct. 128, 8 A. 2d 799), and appellee offered no evidence to rebut it (*Marmon v. Union Collieries Co.*, supra). The situation of appellant in the instant case cannot be better described than was done by Judge PARKER, speaking for this court, in *Cavanaugh v. Lukenbach Steamship Co.*, 125 Pa. Superior Ct. 275, at pages 278, 279, 189 A. 789.

---

[2] *Bausch v. Fidler*, 277 Pa. 573, 121 A. 507; *Johnson v. Jeddo-Highland Coal Co.*, 99 Pa. Superior Ct. 94; *Krock v. Ballard Sprague & Co. et al.*, 104 Pa. Superior Ct. 389, 159 A. 191; *Bonomo v. State Workmen's Insurance Fund et al.*, 111 Pa. Superior Ct. 402, 170 A. 428; *Cavanaugh v. Luckenbach Steamship Co.*, 125 Pa. Superior Ct. 275, 189 A. 789; *Plum v. Hotel Washington et al.*, 125 Pa. Superior Ct. 280, 189 A. 792; *Harmon v. Knoll*, 129 Pa. Superior Ct. 390, 195 A. 448; *Conley v. Allegheny County*, 131 Pa. Superior Ct. 236, 200 A. 287; *Henry v. Pittsburgh Railways Co.*, 131 Pa. Superior Ct. 252, 200 A. 294; *Reckner v. General Water Co. et al.*, 131 Pa. Superior Ct. 538, 200 A. 297; *Bispels v. Charles R. Shoemaker, Inc., et al.*, 133 Pa. Superior Ct. 117, 2 A. 2d 35; *Marmon v. Union Collieries Co.*, 135 Pa. Superior Ct. 582, 7 A. 2d 156; *Weinstock v. United Cigar Stores Co. et al.*, 137 Pa. Superior Ct. 128, 8 A. 2d 799.

Here the contingency foreseen by Judge PARKER has occurred for appellant is "required to secure other employment and, in so doing, he will be handicapped." "It is difficult for a fact finding body to measure with precision loss of earning power and it is equally hard for an appellate court to determine whether the evidence produced will sustain the conclusion reached by the referee or board. If there is any evidence that will support such finding it must be sustained. We have no power to substitute our judgment for that of the board on pure questions of fact. The difficulties encountered here are in part due to the defendant relying almost entirely on the proofs that claimant received, after the accident [the same] wage [that] he had formerly received and their failure to produce any evidence rebutting the evidence of claimant tending to show that claimant was not earning the wages received and that his earning power was materially reduced": *Marmon v. Union Collieries Co.*, supra, 135 Pa. Superior Ct. 582, at page 586, 7 A. 2d 156, at page 159.

Although in the case at bar the physician did not express an opinion in terms of percentage of disability, his testimony together with all the other facts and circumstances furnished evidential support for the finding of the board.

We think the board was justified in finding from the evidence that the agreement providing for compensation under section 306(c) was executed under a mistake of fact. The statement of appellant's injuries sustained on September 17, 1936, and set forth in this agreement, was incomplete. At the time of the execution of the agreement appellant was apparently not fully informed of the true extent of his injuries. Defendant employer and appellee may or may not have known. But the evidence in the record establishes that at the time the agreement was executed appellant was suffering from injury to his index and little fingers, in addition to the injuries enumerated in the agreement. "It is the duty

of an employer to include in such an agreement all the disability from which the employee was suffering at the time and of which it had knowledge": *Johnson v. Purnell et al.,* supra, 131 Pa. Superior Ct. 230, at page 234, 200 A. 151, at page 153. The failure to mention the full extent and seriousness of the injuries which appellant sustained does not appear to have been deliberate, but rather because of a mutual, mistaken belief as to their extent and nature. See *Tinsman, v. Jones & Laughlin Steel Corp.,* 118 Pa. Superior Ct. 516, 524, 180 A. 175.

Appellee urges in its brief that the appeal to this court was from an interlocutory order, and therefore premature since the court below ordered the record remitted to the compensation authorities for further proceedings not inconsistent with its opinion. The court below on appeal to it from the board held as we have hereinabove indicated. In addition thereto the court below in its opinion said: "We do not think the findings of the referee affirmed by the Compensation Board are supported by the evidence and we find no reason therein to justify the Compensation Board in directing an insurance carrier which has already met its liability to pay for an injury against which it did not insure."

The order of the court below is, in effect, notwithstanding the remittitur, a judgment in favor of the defendant employer and its insurance carrier, the appellee. We consider the order final and appealable.

Order of the court below is reversed, and the record is remitted to the court below with direction to enter judgment in accordance with the award.